COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-165-CV

 

 

IN THE INTEREST OF J.K.H., A CHILD                                                     

 

                                                    

                                              ------------

 

            FROM THE 211TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury found that Appellant Victoria H. knowingly
placed or knowingly allowed her daughter, J.K.H., to remain in conditions or
surroundings which endangered the physical or emotional well-being of the
child, that Appellant engaged in conduct or knowingly placed J.K.H. with
persons who engaged in conduct which endangered the physical or emotional
well-being of the child, that Appellant knowingly engaged in criminal conduct
that resulted in her conviction of an offense of confinement or imprisonment
and inability to care for the child for not less than two years from the date
of the filing of the petition, and that termination of the parent-child
relationship between Appellant and J.K.H. is in the child=s best
interest.  The trial court terminated
Appellant=s parental rights in accordance
with the verdict.

In a timely combined motion for new trial and
statement of points, Appellant challenged the legal and factual sufficiency of
the evidence to support each finding. 
The trial court denied the motion and held that the appeal was
frivolous.  On appeal, Appellant contends
that trial court abused its discretion by determining that the appeal is
frivolous because the evidence is legally and factually insufficient to support
the verdict.








Our review of the evidence shows that Appellant,
who was twenty-seven at the time of trial, testified that she first used
marijuana when she was sixteen years old and first used methamphetamine when
she was nineteen years old.  She stated
that she stopped using when she found out that she was pregnant with her first daughter,
S.S.  Appellant admitted that she began
using methamphetamine again when S.S. was seven or eight months old and that
she used one or twice a month, on weekends. 
While S.S. was still small, Appellant and her husband were arrested for
the possession of more than four hundred grams of methamphetamine.  The police found the methamphetamine hidden
in the father=s closet in the couple=s
home.  S.S. has lived with her paternal grandmother
since her parents= arrest.  She was seven at the time of trial.  Appellant had not seen S.S. since her arrest
and did not visit her while she was out on parole.

In April 2003, Appellant pled guilty and received
a two-year sentence for endangering a child and a sentence of ten years=
confinement on the possession charge. 
She also received two ten-year sentences for bail jumping, with these
sentences to be served after she completed the sentence on the possession
charge.  In January 2005, Appellant was
released on parole.  She denied any drug
use while confined.

Even though Appellant went to the State=s
Substance Abuse Felony Program (SAFP) while confined and completed all twelve
steps of the twelve-step program before her 2005 release from prison, upon her
release she relapsed.  While she attended
AA meetings while on parole, she did not work the steps or have a sponsor.  She testified that she met J.K.H.=s father
in March 2005 through a friend whom she met in AA.

The evidence on Appellant=s drug
use after meeting J.K.H.=s father is conflicting. She
admitted at trial that she used methamphetamine twice, once in April and once
in May 2005.  Other evidence at trial
showed that she had previously stated that she had used every day, that she had
a methamphetamine problem, and that methamphetamine had taken over her life.








Appellant also testified that she stopped using
methamphetamine in July 2005 when she found out that she was pregnant with
J.K.H.  Other evidence showed that she
had earlier claimed that she had found out about the pregnancy in October 2005,
after she believed that she had gotten sick from the drug use.  Admitted medical records provide that
Appellant admitted to methamphetamine use in early pregnancy.  Typed physician notes included in State=s
Exhibit 2 provide that she had used a month before J.K.H.=s
birth.  Nothing in the handwritten
records or testimony substantiates this particular allegation or gives the
original source of it, other than the fact that Appellant had been arrested on
a drug possession charge (which was later dismissed) three weeks before the
birth.

Appellant was released from the county jail after
going into labor and, because she had also been charged with parole violations,
was under the supervision of her parole officer.  She had her baby in the hospital on December
24.  The baby was born at twenty-nine
weeks and weighed about two pounds.  No
drugs were detected in the baby.








Appellant testified that she would not have used
drugs after discovering the pregnancy because it would have endangered the
pregnancy, but Appellant also admitted that she did not get prenatal care and,
even though she was uninsured, did not apply for Medicaid during her pregnancy
with J.K.H.  She did, however, take
vitamins from the drug store.  She also
testified that she had had a job but had stopped working because of the
pregnancy.

Appellant left the hospital on December 28 and
has not seen her daughter since that day. 
Appellant=s parole officer took her to the
Salvation Army and told her to report the next day.  Instead, Appellant chose not to report
because she believed that a warrant had been issued.  The parole officer believed that Appellant
had gone to Sanger instead of staying at the Salvation Army.  When Appellant did not report and the parole
officer could not reach her, another parole warrant was issued.  Appellant was arrested again in January 2006
and remained confined at the time of trial. 
Her parole officer testified that she will likely be released again in
2009.

Appellant admitted that she was not in a position
to take care of J.K.H. or offer her permanency at the time of trial.  The father was not in the picture.  No appropriate family placement was
available.  Appellant=s
mother, Appellant=s first choice of J.K.H.=s
caretaker, was also on parole for a methamphetamine offense, and her siblings
either had drug issues or life events that prevented their consideration.  A cousin and his wife intervened in the
lawsuit, but the trial court struck their pleadings, and they dismissed their
petition before trial began.








J.K.H. was placed under the State=s care
and was discharged into the State=s
custody.  She had remained in foster care
from that point.  The State=s plan
was to allow a family to adopt J.K.H.  At
the time of trial, the State was considering four potential adoptive
placements.

The State admitted that it offered no services to
Appellant because she was confined.  She
testified that she had attended Amaybe
seven@ AA
meetings while in the Denton County Jail, from June 2006 until the time of
trial approximately eight months later. 
She had attended no parenting classes, but she testified that the
parenting class in progress when she arrived at the jail was almost over then
and that she had mistakenly believed that another one would be offered.  She testified that she was not involved in
any rehabilitation programs but was writing in a journal and reflecting.  She said that she had every intent of doing
what she was supposed to do by her child and that she deserved a chance to
raise her.








Adopting the analysis we have previously provided
regarding chronic drug use and endangerment,[2]
and applying the appropriate standards of review,[3]
we hold that the evidence is legally and factually sufficient to support the
jury=s
finding that Appellant engaged in conduct which endangered the physical or
emotional well-being of the child.[4]  Further, based on the appropriate standards
of review,[5]
we also hold that the evidence is legally and factually sufficient to support
the jury=s
finding that termination is in J.K.H.=s best
interest.[6]








Accordingly, we hold that the trial court did not
abuse its discretion by determining that the appeal is frivolous.  We overrule Appellant=s sole
issue and affirm the trial court=s order
finding that Appellant=s appeal from the order
terminating her parental rights to J.K.H. would be frivolous.

 

PER CURIAM

PANEL F:    DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  December 13, 2007











[1]See Tex. R. App. P. 47.4.





[2]See In re J.T.G., 121 S.W.3d 117, 125B26 (Tex. App.CFort Worth 2003, no pet.).





[3]See In re
J.P.B., 180 S.W.3d 570, 573B74 (Tex. 2005) (providing legal sufficiency standard
of review); In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006); In re C.H.,
89 S.W.3d 17, 28 (Tex. 2002) (both providing factual sufficiency standard of
review); see also Tex. Fam. Code
Ann. ' 101.007 (Vernon 2002).





[4]See Tex. Fam. Code Ann. '
161.001(E) (Vernon 2002).





[5]See J.P.B.,
180 S.W.3d at 573B74 (providing legal sufficiency standard of review); H.R.M.,
209 S.W.3d at 108; C.H., 89 S.W.3d at 27B28 (both providing factual sufficiency standard of
review); see also Tex. Fam. Code
Ann. ' 263.307(a) (Vernon 2002); In re R.R., 209
S.W.3d 112, 116 (Tex. 2006); Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976) (all discussing best interest and nonexclusive factors for determining
it).





[6]See Tex. Fam. Code Ann. ' 161.001(2).